## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PAUL CAIN,

      Plaintiff,

vs.                                                                                    No. CIV 22-0673 JB/KBM

BERNALILLO COUNTY SHERIFF'S
OFFICE; BRADLEY DENGER, SO, 372;
MARCO BALDONADO, SO, 129; JAMES
CHARLES COGGINS, SO, 139; G. WILLIAM
GILPIN, SO, 248; A. RAYMOND PEREA, SO,
56; ANTHONY SZUREK, SO, 363; D.
PATRICK BROWN, SO, 322; JOSHUA
CRAWLEY, SO, 115, and MUSTAFA
MUDADA, SO, 389,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Complaint, filed in State

court on July 11, 2022 (Doc. 2-1), and removed to federal court on September 13, 2023, <u>see</u>

Amended Notice of Removal, filed September 13, 2022 (Doc. 2); (ii) the County Defendants'

Motion to Dismiss, filed September 20, 2022 (Doc. 4)("Motion to Dismiss"); and (iii) the

Plaintiff's Motion to Remand Matter Back to State Court, filed February 23, 2023

(Doc. 12)("Motion to Remand").  Plaintiff Paul Cain is incarcerated at the Otero County Prison

Facility in Chaparral, New Mexico.  <u>See</u> Complaint ¶ 3, at 2.  He is proceeding pro se.  The

Complaint includes civil rights claims arising under 42 U.S.C. § 1983 and tort claims arising under

the New Mexico Tort Claims Act, N.M.S.A. §§ 41-4-1 to -27 ("NMTCA").  <u>See</u> Complaint ¶ 1,

at 1.  The Court will not exercise supplemental jurisdiction over Cain's State-law claims and,

because it is plain from the Complaint's face that the statute of limitations applicable to Cain's

federal-law claims expired before Cain filed the Complaint, the Court will grant the Motion to Dismiss in part pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 12(b)(6), and will grant the Motion to Remand in part.

## **FACTUAL BACKGROUND**

Cain commenced this case by filing a handwritten Complaint in the County of Bernalillo, Second Judicial District Court, State of New Mexico, on July 11, 2022.  See Complaint at 1-7.[1] When evaluating a motion to dismiss under rule 12(b)(6), the Court takes a complaint's factual allegations as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Accordingly, for this Memorandum Opinion and Order's purposes, the Court assumes that the following facts, taken from the Complaint, are true.

On December 3, 2018, Cain was driving a Mercedes-Benz and his associate, Charles Shape, was driving behind him in another car.  See Complaint at 3-4.  Defendant Mustafa Mudada, a Sheriff's Officer ("SO"), drove up behind Shape.  See Complaint at 3.  Cain and Shape pulled into a gas station parking lot.  See Complaint at 3.  Cain remained in his car while Shape paid for gas.  See Complaint at 4.  Mudada pulled over on the highway adjacent to the gas station and ran a vehicle check on Cain's Mercedes-Benz.  See Complaint at 4.  Mudada later explained to other officers that he ran the vehicle check, because he was suspicious of Hispanic men driving a Mercedes-Benz at night.  See Complaint at 4.  In a written report, Mudada allegedly recorded that he conducted an investigatory stop and that he was doing a suspicious-

---

[1]The Court notes that Cain does not use paragraph numbers regularly throughout the Complaint.  Accordingly, except where Cain uses paragraph numbers, the Court refers to page numbers only when citing to the Complaint.

persons investigation.   See Complaint at 4.   Cain had not broken any laws or traffic ordinances, and Mudada's report reflects the absence of criminal activity.   See Complaint at 4.

When Mudada's vehicle check revealed that the Mercedes had an illegal tag and license plate, he pulled into the gas station parking lot and blocked Cain's car.   See Complaint at 4.   He approached Cain, and asked for his driver's license, insurance, and registration.   See Complaint at 4.   He then asked Cain to get out of the car and walk over to the police cruiser.   See Complaint at 4.   Cain complied at first, but when Mudada grabbed his arm, Cain attempted to run and Mudada tackled him.   See Complaint at 4.   Cain got up to his feet and turned toward Mudada who, again, attempted to grab Cain.   See Complaint at 4.   Cain punched Mudada and ran.   See Complaint at 4.   An unknown "agent"[2] tackled Cain, at which point Mudada and the agent jumped on Cain's back, pinned him down, and handcuffed him.   Complaint at 4-5.   Mudada walked about ten feet away from Cain and the agent, who warned Cain not to move, because Mudada had his weapon pointed at Cain and was ready to use it.   See Complaint at 5.   Cain warned Shape that Mudada was "ready to shoot" them.   Complaint at 5.   Mudada kept his weapon aimed variously on Cain, Shape, and the agent.   See Complaint at 5.   This situation came to an end when other sheriff's vehicles arrived, and Mudada put his weapon away.   Complaint at 5.   Until then, Cain was afraid that Mudada was going to kill him.   See Complaint at 5.

Cain was arrested and refused to answer any questions.   See Complaint at 6.   An unknown officer who attempted to question Cain told Cain that he was lucky, because the officer wanted to shoot him.   See Complaint at 6.   Another officer told Cain that, in Mudada's situation,

---

[2]It is not clear from the Complaint whether this individual was an SO or belonged to a different agency.

he would have shot Cain.   <u>See</u> Complaint at 6.

Cain's criminal defense attorney discovered that the additional officers did not get the names of the "unknown agent" who assisted Mudada at the gas station or the gas station attendant, nor did they get security footage from the gas station.   Complaint at 6.   The several additional SOs named as Defendants in this action, but whose involvement in the relevant events Cain does not describe, did not generate supplemental reports.   <u>See</u> Complaint at 6.   Only a belt recorder was provided in discovery, but it is unclear which officer was wearing it.   <u>See</u> Complaint at 6. Cain contends that the officers' collective failure to report that Mudada "had drawn his firearm and pointed it at nonthreatening, unresisting innocent persons," reveals a conspiracy to cover up Mudada's illegal actions.   Complaint at 6.   In support of this contention, Cain alleges that the officers had duties to "secure the area" where Mudada had drawn his weapon and to generate individual reports pursuant to Bernalillo County Sheriff's Office policy.   Complaint at 6.

## PROCEDURAL BACKGROUND

Based on the foregoing, Cain seeks damages under the tort theories of assault and battery. <u>See</u> Complaint ¶ 1(a), at 1.   He also seeks damages for what he alleges was an unlawful racially motivated traffic stop and an unlawful seizure, <u>see</u> Complaint at 1, 5, a claim which arises under 42 U.S.C. § 1983, and under the Fourth and Fourteenth Amendments to the Constitution of the United States of America.   As set forth above, Cain also contends that the Defendants conspired to cover up Mudada's allegedly unlawful actions.   <u>See</u> Complaint at 6.   The Defendants request that the Court dismiss each of Cain's claims, arguing that the statute of limitations applicable respectively to the tort and § 1983 claims expired before Cain filed the Complaint.   <u>See</u> Motion to Dismiss at 2.   In the Motion to Remand, Cain requests that the Court abstain from considering

his claims and remand the Complaint to the State court.   See Motion to Remand at 4.

## LAW REGARDING PRO SE LITIGANTS

When a party proceeds pro se, a court construes his or her pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers."   Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).   "[I]f the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."   Hall v. Bellmon, 935 F.2d at 1110.   The Court, however, will not "assume the role of advocate for the pro se litigant."   Hall v. Bellmon, 935 F.2d at 1110.   "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."   Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

## LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS

Section 1915A of Title 28 of the United States Code requires courts to conduct a sua sponte review of all civil complaints where a plaintiff is incarcerated and seeks relief from a government official.   See 28 U.S.C. § 1915A.   The Court must dismiss any such prisoner complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted."   28 U.S.C. § 1915A(b).   Similarly, courts must dismiss a prisoner complaint which proceeds in forma pauperis where the complaint is frivolous, malicious, or "fails to state a claim on which relief may be granted."   28 U.S.C. § 1915(e).   The Court also may dismiss a complaint under rule 12(b)(6) if "'it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile.'"   Hall v. Bellmon, 935 F.2d at 1110

- 5 -

(quoting McKinney v. Oklahoma, 925 F.2d 363, 365 (10th Cir. 1991)).   In other words, the same standard of review applies under rule 12(b)(6) and § 1915(e).   See Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007)(citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).   A complaint's sufficiency is a question of law, and when reviewing the complaint, a court must accept as true all of a complaint's well-pled factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   See Tellabs, Inc. v. Makor Issues & Rts. Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (quoting Makor Issues & Rts. Ltd. v. Tellabs, Inc, 437 F.3d 588, 602 (7th Cir. 2006)(second alteration in Tellabs, Inc. v. Makor Issues & Rts., Ltd.))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.   Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. at 678.   "Factual allegations

must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."   Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 at 235-36 (3d ed. 2004); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Nietzke v. Williams, 490 U.S. 319, 327 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face."   Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).   "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."   Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis in original).   The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [*Bell Atl. Corp. v. Twombly*, 550 U.S. at 570.] The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

## LAW REGARDING AFFIRMATIVE DEFENSES

Rule 8(c) of the Federal Rules of Civil Procedure governs affirmative defenses and provides that, in "responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations[.]"  Fed. R. Civ. P. 8(c).  If the district court or jury hearing a case accepts the defendant's affirmative defense, the defense defeats the plaintiff's claim.  See 5 A. Wright & C. Miller, Federal Practice and Procedure § 1270 (4th ed. 2023); Rural Water Dist. No. 2 v. City of Glenpool, 698 F.3d 1270, 1274 (10th Cir. 2012)("[O]nce the court's jurisdiction has been properly invoked in the plaintiff's complaint, the assertion of such a defense is relevant only to whether the plaintiff can make out a successful claim for relief, and not to whether the court has original jurisdiction over the claim itself." (quoting S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 132 (2d Cir. 2010))).  The burden of proof for affirmative defenses generally rests on the defendant.  See Saldana-Sanchez v. Lopez-Gerena, 256 F.3d 1, 5 n.8 (5th Cir. 2001); Schleibaum v. Kmart Corp., 153 F.3d 496, 501 (7th Cir. 1998). In stating affirmative defenses, defendants do not need to provide "factual support."  Lane v. Page, 272 F.R.D. 581, 591 (D.N.M. 2011)(Browning, J.)(declining "to extend the heightened pleading standard the Supreme Court [of the United States of America] established in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* to affirmative defenses pled in answers, because the text of the rules, and the functional demands of claims and defenses, militate against requiring factual specificity in affirmative defenses.").

Although affirmative defenses generally must be pled in a defendant's answer, and not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), an exception exists for cases in which the facts establishing the affirmative defense are apparent on the complaint's face, see Miller v. Shell

Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.   If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").   The statute-of-limitations defense is an affirmative defense that the complaint's uncontroverted facts most likely will establish.   See 5 C. Wright & A. Miller, Federal Practice and Procedure § 1277 (4th ed. 2023).   If a complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then a defendant may move for dismissal under rule 12(b)(6).   See Herrera v. City of Espanola, 32 F.4th 980, 991 (10th Cir. 2022); Rohner v. Union Pac. R.R., 225 F.2d 272, 273-75 (10th Cir. 1955).   A plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute, although the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be argued solely in response to the motion.[3]   Cf.

_____

[3]The Tenth Circuit views a claim based on a statute of limitations as an "affirmative defense," which "[a] plaintiff need not anticipate in the complaint" as "it is the defendant's burden to plead an affirmative defense."   Fernandez v. Clean House, LLC, 883 F.3d 1296, 1298-99 (10th Cir. 2018)(citing Gomex v. Toledo, 446 U.S. 635, 640 (1980)).   See United States v. Titterington, 374 F.3d 453, 456 (6th Cir. 2004)(citing United States v. Cook, 84 U.S. 168 (1872))("[T]he Supreme Court has held that a statute-of-limitations claim falls on the affirmative-defense side of the line.").   Plaintiffs are not required to "plead against affirmative defenses" and, accordingly, a motion to dismiss cannot be sustained on factors of an affirmative defense the plaintiff was not required to anticipate.   Asebedo v. Kan. State Univ., 559 F. App'x. 668, 671-72 (10th Cir. 2014)(holding that a dismissal based on a plaintiff omitting a claim of reasonableness in his or her complaint is invalid when reasonableness is an element of an affirmative defense and thus not required in the complaint).   Accordingly, "[t]he statute of limitations . . . is not at issue until it is raised," and "[o]nly then does it become incumbent upon the plaintiff to meet the allegations or face dismissal of [their] complaint."   Cutsinger v. Cullinan, 72 Ill. App. 3d 527, 531-32 (Ill. App. 1979).   The Court thus concludes that a plaintiff is not required to include facts to support an assertion that a different statute of limitations or an equitable tolling doctrine applies in their initial complaint as this would effectively be requiring the plaintiff to plead against an affirmative defense.

Kincheloe v. Farmer, 214 F.2d 604, 605 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).   It appears, from case law in the Courts of Appeals, that a plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV-08-140-W, 2008 WL 3833472 (W.D. Okla. August 15, 2008)(West, J.), and, although the Tenth Circuit has not addressed this practice squarely, the Court has permitted this avoidance practice, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1208-09, 1234-38 (D.N.M. 2014)(Browning, J.).

---

Asebedo v. Kansas State University is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court concludes that Asebedo v. Kansas State University has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

## LAW REGARDING § 1983 CLAIMS

Section 1983 is a vehicle for vindicating substantive rights against State officials under the Constitution.   See Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Albright v. Oliver, 510 U.S. 266, 271 (1994)(noting that § 1983 creates no substantive rights but that it is rather the means through which a plaintiff may seek redress for deprivations of rights that the Constitution protects); Bolden v. City of Topeka, 441 F.3d 1129 (10th Cir. 2006).   Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.   Only a "person" may be held liable under § 1983.   See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that States are not "persons" under § 1983); Lippoldt v. Cole, 468 F.3d 1204, 1211 (holding that an unincorporated association is not a "person" under § 1983); 42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must assert acts by State government officials acting under color of law that result in a deprivation of rights the Constitution secures. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).   There must be a connection between official conduct and violation of a constitutional right; conduct that is not connected to a constitutional violation is not actionable under § 1983.   See Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 1998).

A plaintiff must plead that each government official, through the official's individual actions, has violated the Constitution.   See Ashcroft v. Iqbal, 556 U.S. at 676; Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008)(explaining that, to succeed under § 1983, the plaintiff must

allege an identified official's personal involvement in the alleged constitutional violation).   In a § 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claim against him or her."   Robbins v. Oklahoma, 519 F.3d at 1249-50 (emphasis in original).   Generalized statements that the defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, are not sufficient to state any claim for relief.   See Robbins v. Oklahoma, 519 F.3d at 1249-50.

"Congress did not provide a statute of limitations for actions brought under § 1983." Herrera v. City of Espanola, 32 F.4th at 989.   Federal courts therefore look to the law of the forum State to determine the applicable statute of limitations for a § 1983 action, which typically is the State statute of limitations for personal injury claims.   See Herrera v. City of Espanola, 32 F.4th at 989.   Section 37-1-8 of the New Mexico Annotated Statutes provides a three-year limitations period for § 1983 claims.   See N.M.S.A. § 37-1-8 ("[F]or § 1983 claims arising in New Mexico the limitations period is three years, as provided in New Mexico's statute of limitations for personal-injury claims.").   "Determining the accrual date of a § 1983 action, however, 'is a question of federal law that is not resolved by reference to state law.'"   Herrera v. City of Espanola, 32 F.4th at 990 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).   "Because no federal statutory provision governs how to determine the accrual date, courts look to 'federal rules conforming in general to common-law tort principles.'"   Herrera v. City of Espanola, 32 F.4th at 990 (quoting Wallace v. Kato, 549 U.S. at 388).   "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief."   Wallace v. Kato, 549 U.S. at 388 (quoting Bay Area

Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)).

"'A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action,'" Smith v. City of Enid, 149 F.3d 1151, 1154 (10th Cir. 1998)(quoting Baker v. Bd. of Regents, 991 F.2d 628, 632 (10th Cir. 1993)), or "when the plaintiff's 'right to resort to federal court was perfected,'" Herrera v. City of Espanola, 32 F.4th at 990 (quoting Oppenheim v. Campbell, 571 F.2d 660, 662 (D.C. Cir. 1978), and citing Bergman v. United States, 751 F.2d 314, 316 (10th Cir. 1984)).

## LAW REGARDING THE NMTCA

Under well-settled New Mexico law, the NMTCA provides governmental entities and police officers with immunity from tort liability unless the Legislature specifically waived the immunity. See Weinstein v. City of Santa Fe ex rel Santa Fe Police Dep't, 1996-NMSC-021, ¶ 6, 121 N.M. 646, 649, 916 P.2d 1313, 1316 (citing Abalos v. Bernalillo Cnty. Dist. Att'y's Off., 1987-NMCA-026, ¶ 7, 105 N.M. 554, 557, 734 P.2d 794, 797; N.M.S.A. § 41-4-4).   Section 41-4-15 of the NMTCA requires that a plaintiff seeking relief under the NMTCA file suit within two years of the occurrence.   See Dutton v. McKinley Cnty. Bd. of Comm'rs, 1991-NMCA-130, ¶ 13, 113 N.M. 51, 53, 822 P.2d 1134, 1136.   Section 41-4-15(A) states:

> Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file.   This subsection applies to all persons regardless of minority or other legal disability.

N.M.S.A. § 41-4-15(A).

In Aragon & McCoy v. Albuquerque National Bank, 1983-NMSC-020, 99 N.M. 420, 659 P.2d 306 the Supreme Court of New Mexico states: "The plain language of [§ 41-4-15(A)]

indicates that the period of limitations began to run when an 'occurrence resulting in loss' took place.  Until such a loss took place, the statute of limitations could not begin to run."  1983-NMSC-020, ¶ 17, 99 N.M. at 424, 659 P.2d at 311.   See Estate of Gutierrez v. Albuquerque Police Dep't, 1986-NMCA-023, ¶ 10, 104 N.M. 111, 113, 717 P.2d 87, 89 ("The plain language of this statute indicates when the period of limitations begins to run.")(citing Aragon & McCoy v. Albuquerque Nat'l Bank, 1983-NMSC-020, 99 N.M. 420, 659 P.2d 306).   The Supreme Court of New Mexico has stated that the NMTCA statute of limitations commences when "'the plaintiff knows or with reasonable diligence should have known of the injury and its cause.'"   Maestas v. Zager, 2007-NMSC-003, ¶ 19, 141 N.M. 154, 160, 152 P.3d 141, 147 (2007).   See Herrera v. City of Espanola, 32 F.4th at 992 (noting that the NMTCA's statute of limitations is similar to § 1983's statute of limitations, claims under which accrue "'when the plaintiff knows or should know that his or her constitutional rights have been violated'" (quoting Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994), and citing Maestas v. Zager, 2007-NMSC-003, ¶ 22, 141 N.M. at 161, 152 P.3d at 148); Saiz v. Belen Sch. Dist., 1992-NMSC-018, ¶ 41 n.12, 113 N.M. 387, 401 n.12, 827 P.2d 102, 116 n.12 (1992)("[A] statute of limitations begins to run when a plaintiff's cause of action accrues or is discovered."); Scott v. Dona Ana Cnty, No. 31,751, 2013 WL 4516379, at *3 (N.M. Ct. App. June 12, 2013)(citing Maestas v. Zager, 2007-NMSC-003, ¶ 22, 141 N.M. at 161, 152 P.3d at 148, for the proposition "that a statute of limitations begins to run when a plaintiff knows or with reasonable diligence should have known of the injury and its cause, even if the claimant is not aware of the full extent of the injury")).   See also 1 C. Corman, Limitation of Actions § 7.4.1, at 526-27 (1991)("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results

in damages.   The cause of action accrues even though the full extent of the injury is not then known or predictable.").

## LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction."   Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).   Federal courts "possess only that power authorized by [the] Constitution and statute[.]"   Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).   Among the powers that Congress has bestowed upon the federal courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331-32.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."   Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.   The Supreme Court long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction. Federal courts could exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact."   United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).   Ancillary jurisdiction, on the other hand, required more than a common nucleus of operative fact; the ancillary claim must have been "logically dependen[t]" on the original claim over which the federal court had jurisdiction, and "typically involve[d] claims by a defending party haled into court against his will, or by another person whose rights might be

irretrievably lost unless he could assert them in an ongoing action in federal court," as opposed to claims "asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court."   Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375-76 (1978).

In 1988, the Honorable William H. Rehnquist, Chief Justice of the Supreme Court of the United States of America, created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.   See James v. Chavez, No. CIV 09–0540 JB/CG, 2011 WL 6013547, at *5 (D.N.M. November 21, 2011)(Browning, J.)(citing 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.)).   In response to the Committee's conclusions regarding pendent and ancillary jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).   In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."   Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).   This new congressional grant eliminated the distinction between pendant jurisdiction and ancillary jurisdiction.   In Exxon Mobil Corp. v. Allapattah Services, Inc., the Supreme Court explains that "§ 1367 do[es] not acknowledge any distinction between pendent jurisdiction and . . . ancillary

jurisdiction . . . .   Nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary."   545 U.S. at 559.

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.   See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir.2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).   In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.   Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1165.   The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.   383 U.S. at 726. Similarly, § 1367(c) directs courts to consider whether:

> (1)   the claim raises a novel or complex issue of State law,
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)   the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).   In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity . . . ."   Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

- 17 -

## <u>ANALYSIS</u>

The Court will grant in part and deny in part the Motion to Dismiss and will grant in part the Motion to Remand.   The Court will not exercise supplemental jurisdiction over Cain's State-law claims and will remand those claims to the County of Bernalillo, Second Judicial District Court, State of New Mexico.   Additionally, because the statute of limitations has expired regarding Cain's remaining federal-law claims, the Court will dismiss those claims with prejudice.

## I.   **THE COURT WILL NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER CAIN'S STATE-LAW CLAIMS.**

Although the Court has jurisdiction over Cain's federal-law claims, the Court will not exercise supplemental jurisdiction over Cain's State-law claims.   In the Plaintiff's Objection to Dismissal, filed September 28, 2022 (Doc. 6)("Response"), and in his Motion to Remand, Cain argues that this case was not properly removed to federal court and that the Court should remand the case to State court.   <u>See</u> Response at 1-2; Motion to Remand at 1.   Because Cain's Complaint raises claims arising under a federal statute, namely 42 U.S.C. § 1983, the Court may exercise supplemental jurisdiction over the State-law claims which "derive from a common nucleus of operative fact."   <u>United Mine Workers v. Gibbs</u>, 383 U.S. at 725.   The State-law issues here are not novel or complex and they do not predominate over the § 1983 claims, but there is a compelling reason to remand them, because, as the Court discusses below, the Court will dismiss Cain's federal-law claims.   <u>See</u> <u>Smith v. Enid City Comm'n ex rel. City of Enid</u>, 149 F.3d 1151 (10th Cir. 1998)("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.")(citing 28 U.S.C. § 1367(c)(3); <u>Ball v. Renner</u>, 54 F.3d 664, 669 (10th Cir. 1995)); 28 U.S.C. § 1367(c).   Accordingly, the Court

grants in part and denies in part the Motion to Remand, and will remand Cain's State-law claims

to the County of Bernalillo, Second Judicial District Court, State of New Mexico.

## II.    THE STATUTE OF LIMITATIONS BARS CAIN'S FEDERAL CLAIMS.

As Cain alleges in the Complaint, the events underlying the § 1983 and State tort claims

occurred on December 3, 2018.  See Complaint at 3.  Cain filed the Complaint in State court

more than three-and-a-half years later, on July 11, 2022.  See Complaint at 1.  Cain filed his

claims, therefore, more than half a year after the statute of limitations applicable to the § 1983

claims expired.  See N.M.S.A. § 37-1-8.  Although Cain responded to the Motion to Dismiss, he

neither asserted that a different statute of limitations applied nor attempted to demonstrate

equitable tolling.   He also does not allege equitable tolling or any alternative means of extending

the statute of limitations in his Complaint.   Accordingly, the Court will dismiss Cain's federal

claims with prejudice and will grant the Motion to Dismiss in part.

**IT IS ORDERED** that: (i) County Defendants' Motion to Dismiss, filed September 20,

2022 (Doc. 4), is granted in part and denied in part; (ii) the federal claims in Plaintiff's Complaint,

filed in State court on July 11, 2022 (Doc. 2-1), and removed to federal court on September 13,

2023, see Amended Notice of Removal, filed September 13, 2022 (Doc. 2), are dismissed with

prejudice; (iii) Plaintiff's Motion to Remand Matter Back to State Court, filed February 23, 2023

(Doc. 12), is granted in part; (iv) the State-law claims that remain in the case are remanded to the

County of Bernalillo, Second Judicial District Court, State of New Mexico; and (v) Final Judgment

will be entered separately.

UNITED STATES DISTRICT JUDGE

- 19 -

*Parties and counsel:*

Paul Cain
Los Lunas, New Mexico

      *Plaintiff pro se*

Nicholas S. Autio
NM Local Government Law, LLC
Albuquerque, New Mexico

      *Attorney for the Defendants*